UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                                                                   Case No. 3:11-bk-5114-PMG

Stewart M. Bell,

_____Debtor.                                   Chapter 7

Stewart M. Bell,

                                                Plaintiff,

vs.                                                                                     Adv. No. 3:12-ap-693-PMG

United States of America
(Treasury Department,
Internal Revenue Service),

_____Defendant.

**FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND MEMORANDUM OPINION**

**THIS CASE** came before the Court for a final evidentiary hearing in this adversary proceeding.

For a late Form 1040 to qualify as a tax return, it must represent an honest and reasonable attempt to satisfy the tax laws. Generally, a late Form 1040 does not represent an honest and reasonable effort to comply with the tax laws, if the taxpayer does not file the Form until after the IRS has issued a notice of deficiency and assessed the tax liability, and the taxpayer does not provide a legitimate

explanation or justification for his tardiness. According to the Eleventh Circuit Court of Appeals, the appropriate period to evaluate a late Form 1040 is the entire time frame of the taxpayer's actions.

In this case, the Debtor submitted Form 1040s for the 2001, 2002, 2003, and 2004 tax years in February of 2007, after the IRS had issued Notices of Deficiency and assessed the tax liabilities for those years. The record for the entire period of the Debtor's conduct shows that (1) the Debtor's initial failure to file the Forms was based on an invalid challenge to the constitutionality and legality of the tax laws, (2) the Debtor continued the challenge during the IRS's process of estimating the tax liability, and (3) the Debtor did not file the late Form 1040s until six months after the taxes were assessed, and seven months after he received the Forms from his tax preparer.

For these reasons, the late Form 1040s do not represent an honest and reasonable effort to satisfy the tax laws, and do not constitute returns under applicable nonbankruptcy law. Accordingly, the Debtor's tax liabilities for 2001, 2002, 2003, and 2004 are excepted from discharge under §523(a)(1)(B)(i) of the Bankruptcy Code.

**Background**

The Debtor was a physical education teacher in Marion County, Florida for 33 years, and retired in 2005. During his teaching career, the Debtor also was self-employed as a swimming pool salesman.

The Debtor filed Form 1040 tax returns for each year through the 2000 tax year. He did not file federal income tax returns for the 2001, 2002, 2003, or 2004 tax years, however, on or before April 15 of the year following the respective tax year.

On December 14, 2005, the IRS sent the Debtor two letters notifying him that an examination had been conducted, and that the Debtor's tax liability had been estimated in the amount of $86,394.00 for the 2001 tax year, the amount of $55,338.00 for the 2002 tax year, the amount of $73,566.00 for the

2003 tax year, and the amount of $41,955.00 for the 2004 tax year. (Plaintiff's Exhibit 1; Defendant's Exhibit 14).

The Debtor did not file any tax returns for the 2001 through 2004 tax years between December of 2005, when he received the letters informing him of the estimated tax liabilities, and August 23, 2006.

On August 23, 2006, the IRS sent the Debtor a Notice of Deficiency informing him of its determination that he owed a tax in the amount of $56,477.00 for 2001, a tax in the amount of $32,587.00 for 2002, a tax in the amount of $88,204.00 for 2003, and a tax in the amount of $30,110.00 for 2004, plus certain penalties detailed in the Notice. (Plaintiff's Exhibit 6; Defendant's Exhibit 16).

On February 17, 2007, the Debtor signed Form 1040s for the 2001, 2002, 2003, and 2004 tax years. The Forms were received by the IRS on February 20, 2007. (Plaintiff's Exhibits 7, 8, 9, 10; Defendant's Exhibits 17, 18, 19, 20).

On July 12, 2011, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code.

The Debtor subsequently filed a Complaint to determine that the income tax debt owed to the IRS for the 2001, 2002, 2003, and 2004 tax years was discharged in his Chapter 7 case. In the adversary proceeding, the Court entered an Order on the parties' cross-Motions for Summary Judgment, and found that an evidentiary hearing should be conducted to determine whether the Debtor's late Form 1040s "represent an honest and reasonable attempt to satisfy the requirements of the tax law," and therefore constitute tax returns under applicable nonbankruptcy law. (Doc. 26).

## Discussion

Section 523(a)(1)(B)(i) of the Bankruptcy Code provides that a Chapter 7 discharge does not discharge an individual debtor from any debt for a tax "with respect to which a return, or equivalent

report or notice, if required, was not filed or given." 11 U.S.C. §523(a)(1)(B)(i). Under §523, "the term 'return' means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements)." 11 U.S.C. §523.

Under "applicable nonbankruptcy law," the standard for determining whether a document is a return consists of a four-part analysis known as the *Beard* test. The four requirements for a return under the *Beard* test are that the document (1) must purport to be a return; (2) must be executed under penalty of perjury; (3) must contain sufficient data to allow calculation of the tax; and (4) must "represent an honest and reasonable attempt to satisfy the requirements of the tax law." In re Hindenlang, 164 F.3d 1029, 1033 (6th Cir. 1999).

The issue in this case is whether the Debtor's late Form 1040s represent an honest and reasonable attempt to comply with the tax laws, and thereby satisfy the fourth element of the *Beard* test. If the Forms do not satisfy the *Beard* test, the Debtor did not file "returns" for 2001, 2002, 2003, or 2004, and the tax liabilities for those years are not dischargeable in his Chapter 7 case under §523(a)(1)(B)(i) of the Bankruptcy Code.

### A. The Justice decision

In In re Justice, 817 F.3d 738, 740 (11th Cir. 2016), the debtor had filed late Form 1040s for four tax years, after the IRS had issued Notices of Deficiency and assessed the taxes, and the issue was whether the late Forms were "returns" for purposes of dischargeability under §523(a). The Eleventh Circuit Court of Appeals found that the Forms did not qualify as tax returns under the *Beard* test because they did not evidence an honest and reasonable effort to comply with the tax laws. Consequently, the debtor's tax liabilities for the relevant years were nondischargeable under §523(a)(1)(B)(i) of the Bankruptcy Code. In re Justice, 817 F.3d at 746.

4

In reaching this conclusion, the Eleventh Circuit held that "the fourth *Beard* factor requires analysis of the entire time frame relevant to the taxpayer's actions. Failure to file a timely return, at least without a legitimate excuse or explanation, evinces the lack of a reasonable effort to comply with the law." Id. at 744.

The holding includes at least two components. First, the time frame to evaluate the taxpayer's efforts at compliance is the entire period of his conduct regarding the relevant tax years. This period includes all of the taxpayer's conduct from the time of the original delinquency through the filing of the late documents, and not just the shortened period surrounding the taxpayer's ultimate decision to file the late forms. In re Justice, 817 F.3d at 744-45. See In re Johnson, 2016 WL 1599609, at 4 (Bankr. S.D. Fla.)(In determining that the debtor's filings did not represent an honest and reasonable attempt at compliance, the Court considered "the entire time frame from delinquency through when the belated returns were filed.").

Second, for a late filing to constitute a return, the taxpayer must establish a "legitimate excuse or explanation" for his tardiness. In Justice, for example, the Eleventh Circuit found that the debtor's Form 1040s were not returns, because they were filed many years late and "without any justification at all." In re Justice, 817 F.3d at 746. See In re Johnson, 2016 WL 1599609, at 4(The Court found that the debtor provided no justification for his tardiness, where he simply stated in conclusory fashion that his filings were made in good faith to satisfy his obligations under the tax laws.).

**B. No honest and reasonable attempt to satisfy the tax laws**

In this case, the Court finds that the Debtor's late Form 1040s do not represent an honest and reasonable effort to comply with the tax laws. The Forms were filed years after the returns were due, and after the IRS had issued Notices of Deficiency and assessed the taxes. The Court has evaluated all

of the Debtor's conduct from the initial delinquency through the period surrounding the late Forms, and finds that the late filings were not justified or based on a legitimate excuse or explanation.

### 1. The Debtor's invalid initial challenge

First, the Debtor's initial failure to file his tax returns was based on an invalid challenge to the constitutionality and legality of the tax laws.

The invalid challenges stem from the Debtor's involvement in a tax protester organization. His association with the tax protester group began in late 2000. At trial, the Debtor testified that he attended a presentation by an individual who persuaded him that the Internal Revenue Code's requirement to file an income tax return was unlawful and unconstitutional. His adoption of the tax protester position is evidenced by a Notice of Default that was addressed to the IRS in December of 2000. (Plaintiff's Exhibit 1; Defendant's Exhibit 14). In the Notice, the Debtor sought an "admission" from the IRS that there was no lawful basis to assess a tax liability against him, and that any claim by the IRS that he was liable for a tax was "based upon something other than law."

### 2. The Debtor's failure to participate in the IRS assessment process

Second, the Debtor continued to assert the invalid challenge during the IRS's process of estimating and assessing his tax liability. The Debtor's failure to participate or assist in the process is evidenced by the communications between the Debtor and the IRS in 2004 and 2005:

> 1. In December of 2004 and January of 2005, after the Debtor had failed to file returns for three years, the IRS requested a meeting with the Debtor, and also sent the Debtor two separate requests for the production of documents regarding his 2001, 2002, and 2003 tax liabilities. (Defendant's Exhibits 1, 2, 3, 4).
>
> 2. In response to the requests, the Debtor sent the IRS an "Affidavit of Truth" dated January 6, 2005, in which he disputed the IRS's "constitutional and/or legislative jurisdiction" over him, and also disputed the IRS's authority to assess a tax on "income." (Defendant's Exhibit 5).

3. On January 19, 2005, the IRS sent the Debtor a letter stating that the "federal tax laws are passed by Congress and signed by the President," and that "federal courts have consistently ruled against" the Debtor's position that the tax laws are unconstitutional. (Defendant's Exhibit 6).

4. On May 23, 2005, the Debtor sent the IRS a second "Affidavit of Truth," in which he again disputed the IRS's jurisdiction and authority to assess an income tax. (Defendant's Exhibit 7).

5. On September 20, 2005, the IRS sent the Debtor a letter that provided a history of the origin and codification of the tax laws, and indicated that the courts had "spoken very clearly" on the validity of the income tax. On the same date, the IRS sent the Debtor a third request for the production of documents. In the third request, the IRS noted that the Debtor had not appeared for the previously-scheduled appointments, and had not provided any documents in response to the two prior requests. (Defendant's Exhibits 8, 9).

6. On October 7, 2005, the IRS sent the Debtor a fourth request for production of documents regarding his 2001, 2002, 2003, and 2004 tax liabilities, and again noted that the Debtor had not responded to the prior requests. (Defendant's Exhibit 10).

7. On November 7, 2005, the Debtor sent the IRS a letter captioned "Challenge to your authority," and an accompanying document entitled "Constructive Notice of Demand for Direct Challenge to Personal Authority." Generally, the letter and Notice asserted that the IRS representatives had no authority to act and were "operating outside of venue and subject matter jurisdiction of the Internal Revenue Service." (Defendant's Exhibits 11, 12).

8. On November 9, 2005, the Debtor sent a letter to the IRS in which he asserted that the IRS representative's actions were fraudulent. (Defendant's Exhibit 13).

The communications show that the IRS commenced its examination of the Debtor's tax liability in 2004, after the Debtor had failed to file returns for the 2001, 2002, and 2003 tax years. Throughout 2005, the Debtor did not provide the information requested by the IRS, but instead challenged the validity and lawfulness of the tax code. In fact, the Debtor continued to challenge the IRS's authority to assess an income tax, even after the IRS had responded to his assertions and issued four separate requests for the production of documents.

The Debtor failed to participate in the IRS's examination of his tax liability, and failed to assist in the process of estimating and assessing his tax liability. See In re Wogoman, 475 B.R. 239, 243-44 (10th Cir. BAP 2012), and In re Martin, 2013 WL 5323350, at 2 (D. Colo.).

### 3. The Debtor's delay after the taxes were estimated and assessed

Third, even after the IRS had estimated his tax liability for 2001, 2002, 2003, and 2004, the Debtor did not file his late Form 1040s until seven months after he had received the Forms from his tax preparer, and six months after the taxes were actually assessed.

On December 14, 2005, the IRS sent the Debtor its examination report showing the Debtor's estimated tax liabilities. (Plaintiff's Exhibit 1; Defendant's Exhibit 14).

According to the Debtor, the report caused him to realize that his involvement with the tax protester organization was a mistake. Shortly after receiving the report, therefore, the Debtor contends that he engaged the tax representation firm of JK Harris & Company to prepare his tax returns. On January 12, 2006, the Debtor advised the IRS that he had retained JK Harris, and JK Harris and the IRS communicated regarding the Debtor's account in January and February of 2006. (Plaintiff's Exhibits 2, 3, 4).

On July 19, 2006, JK Harris sent the IRS copies of draft tax returns that it had prepared for the Debtor for the 2001 through 2004 tax years. The facsimile cover sheet contained the following note to the IRS representative:

> As requested, find a copy of the returns mailed to taxpayer yesterday. I have requested he mail the returns to your attention and provided him with an envelope that has your name and address listed.

(Plaintiff's Exhibit 5; Defendant's Exhibit 15). The Debtor acknowledges that he received the returns from JK Harris in July of 2006. Despite the cover sheet indicating that he had been instructed to send

the returns to the IRS, however, the Debtor testified that he signed the returns and mailed them back to JK Harris, rather than to the IRS as directed.

The returns were not filed with the IRS in July or August of 2006.

Consequently, the IRS determined the amount of the Debtor's tax liability for 2001, 2002, 2003, and 2004, and issued a Notice of Deficiency informing him of the determination on August 23, 2006. (Plaintiff's Exhibit 6; Defendant's Exhibit 16).

Six months after the Notice of Deficiency, on February 17, 2007, the Debtor signed the Form 1040s prepared by JK Harris. According to the Debtor, he again mailed them to JK Harris, instead of to the IRS. In any event, the signed Form 1040s were received by the IRS on February 20, 2007, as indicated by a "received" stamp on the Forms. (Plaintiff's Exhibits 7, 8, 9, 10; Defendant's Exhibits 17, 18, 19, 20).

The Debtor contends that he intended to correct his initial failure to file the returns as soon as he received the notice of his estimated liabilities in December of 2005. Even though the Debtor retained JK Harris to assist him with his tax returns, however, the record shows that he did not sign the Form 1040s prepared by JK Harris until seven months after he received them, and six months after the taxes were actually assessed.

### 4. Nondischargeability under §523(a)(1)(B)(i)

According to the Debtor, he now recognizes that the basis for his initial non-filing of the tax returns was misguided. Because of his claimed abandonment of the tax protester views as of December of 2005, the ultimate filing of the Form 1040s in February of 2007, and his efforts to pay the liability since that time, the Debtor asserts that his prior deficiencies have been rehabilitated, and that the tax debt should be discharged in his Chapter 7 case.

The issue for dischargeability purposes in a bankruptcy case, however, is whether untimely documents filed by a debtor were "returns" under §523 of the Bankruptcy Code and nonbankruptcy law. If a liability is a tax debt for which a return was not filed, the liability is not dischargeable under §523(a)(1)(B)(i), regardless of the debtor's subsequent assertion that he attempted to correct his delinquency.

In this case, the Court finds that the Form 1040s belatedly filed by the Debtor in 2007 for the 2001, 2002, 2003, and 2004 tax years were not returns, because they do not represent an honest and reasonable effort to satisfy the tax laws. Consequently, the Debtor's claim that he has rehabilitated his noncompliance does not alter the conclusion that the tax liabilities are nondischargeable in his Chapter 7 case under §523(a)(1)(B)(i) of the Bankruptcy Code.

## Conclusion

For a late Form 1040 to qualify as a tax return, it must represent an honest and reasonable attempt to satisfy the tax laws. Generally, a late Form 1040 does not represent an honest and reasonable effort to comply with the tax laws, if the taxpayer does not file the Form until after the IRS has issued a notice of deficiency and assessed the tax liability, and the taxpayer does not provide a legitimate explanation or justification for his tardiness. According to the Eleventh Circuit Court of Appeals, the appropriate period to evaluate a late Form 1040 is the entire time frame of the taxpayer's actions.

In this case, the Debtor submitted Form 1040s for the 2001, 2002, 2003, and 2004 tax years in February of 2007, after the IRS had issued Notices of Deficiency and assessed the tax liabilities for those years. The record for the entire period of the Debtor's conduct shows that (1) the Debtor's initial failure to file the Forms was based on an invalid challenge to the constitutionality and legality of the tax laws, (2) the Debtor continued the challenge during the IRS's process of estimating the tax

liability, and (3) the Debtor did not file the late Form 1040s until six months after the taxes were assessed, and seven months after he received the Forms from his tax preparer.

For these reasons, the late Form 1040s do not represent an honest and reasonable effort to satisfy the tax laws, and do not constitute returns under applicable nonbankruptcy law. Accordingly, the Debtor's tax liabilities for 2001, 2002, 2003, and 2004 are excepted from discharge under §523(a)(1)(B)(i) of the Bankruptcy Code.

Accordingly:

**IT IS ORDERED** that:

1. The tax debts owed by the Debtor, Stewart M. Bell, to the United States of America (Treasury Department, Internal Revenue Service), for the 2001, 2002, 2003, and 2004 tax years are nondischargeable in the Debtor's Chapter 7 case pursuant to §523(a)(1)(B)(i) of the Bankruptcy Code.

2. A separate Final Judgment in favor of the Defendant, the United States of America (Treasury Department, Internal Revenue Service), and against the Debtor, Stewart M. Bell, will be entered consistent with these Findings of Fact and Conclusions of Law.

**DATED** this 25 day of January, 2017.

BY THE COURT

PAUL M. GLENN
United States Bankruptcy Judge